UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HOOSIER ENERGY RURAL ELECTRIC COOPERATIVE, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| JOHN HANCOCK LIFE INSURANCE COMPANY; OP MEROM GENERATION I, LLC; MEROM GENERATION I, LLC; AE GLOBAL INVESTMENTS, LLC; AMBAC CREDIT PRODUCTS, LLC; AMBAC ASSURANCE CORPORATION and COBANK, ACB, | )  CASE NO. 1:08-cv-1560-DFH-DML<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

POST-APPEAL ENTRY ON INJUNCTION SECURITY ISSUES

On November 25, 2008, the court issued a preliminary injunction to block defendant Ambac and its affiliates from making a payment of approximately $120 million to defendant John Hancock Life Insurance Company and its affiliates pursuant to a credit default swap agreement. See *Hoosier Energy Rural Electric Cooperative, Inc. v. John Hancock Life Ins. Co.*, 588 F. Supp. 2d 919 (S.D. Ind. 2008). The transaction involved a complex "sale-in lease-out" tax shelter transaction involving the Merom generating plant owned by plaintiff Hoosier Energy Rural Electrical Cooperative, Inc. On September 17, 2009, the Seventh Circuit affirmed the issuance of the injunction. — F.3d —, 2009 WL 2981884 (7th Cir. 2009). Although the Seventh Circuit disagreed with this court's evaluation

of Hoosier Energy's challenge to the underlying legality of the transaction, the Seventh Circuit found sufficient merit in Hoosier Energy's argument for temporary commercial impracticability. In its opinion, the Seventh Circuit also stated that (1) intervening events have made it necessary for this court to revisit the issue of security for the injunction, and (2) in any event, the injunction may not stay in place longer than the end of 2009, since "temporary" commercial impracticability must remain temporary. *See id.* at *7.

The court held a hearing on Friday, September 24, 2009, to address the issue of security for the preliminary injunction, which remains in effect. On December 11, 2008, this court had concluded that John Hancock was entitled to total security of $132 million, calculated by taking the then-current amount of the termination payment that John Hancock sought and adding approximately ten percent as a cushion against transaction costs and other uncertainties. *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 2008 WL 5216027, at *2 (S.D. Ind. Dec. 11, 2008). (The court will not repeat here that earlier discussion of the applicable legal principles and standards.) The critical issue was the form of that security and whether those forms provided sufficient security to John Hancock to protect it against the risk that the court erred by issuing the injunction. The court found that John Hancock was protected by the existing credit default swap agreements with Ambac, though that protection was not sufficient by itself. The nature of the default event here, the downgrade of Ambac's credit rating, puts at issue the reliability of Ambac's promises to John

Hancock. The court ordered three additional forms of security. First, Hoosier Energy was required to post a $2 million cash bond. Second, Hoosier Energy was required to post a general bond undertaking to pay John Hancock up to an additional $130 million if the injunction was issued erroneously. Third, the court found that John Hancock's existing second mortgage on the Merom generating facility provided substantial and sufficient additional security. See *id.* at *11.

Over the last nearly ten months, there have been five significant changes in circumstances. First, the Seventh Circuit ordered Hoosier Energy to post an additional $20 million in cash security in January 2009. Hoosier Energy did so in the form of a letter of credit from defendant CoBank, which lends to Hoosier Energy and other rural electrical cooperatives. Second, Ambac's financial results and credit ratings have continued to decline, primarily as a result of its role in insuring securities backed by subprime residential mortgages.[1] Third, the amount of the termination payment that would be due to John Hancock based on the default has increased according to the schedule in the parties' deal. The amount of the termination payment would increase to approximately $126.4 million as of December 30, 2009. Fourth, under the terms of the Merom transaction, John Hancock now has a second mortgage on all Hoosier Energy generating assets, not just the Merom facility. Fifth, Hoosier Energy has obtained a better and current appraisal of the assets secured by that mortgage.

---

[1] Ambac has filed a series of updates with this court since the injunction was issued. Those documents provide details about its financial condition and credit ratings. See Dkt. Nos. 121, 123, 124, 125, 126, 131, 132, and 133.

After reviewing Hoosier Energy's submission of September 24, 2009 and considering the parties' arguments on the matter, the court takes the following actions in response to the Seventh Circuit's instructions. The total amount of the security must be increased to $140 million. That figure reflects the increase in the current termination payment that would be due to John Hancock, plus approximately ten percent, as before. The form of that security includes the following, in addition to the credit default swap arrangement itself. First, the cash security must be increased from $22 million to $27 million. Second, Hoosier Energy must submit a new injunction bond for $113 million to replace the earlier one. This bond will supplement the cash security. ($140 million minus $27 million cash security equals $113 million.) Third, the broader mortgage on all Hoosier Energy assets provides John Hancock with substantial protection. The court finds that these forms of protection will balance, at least for the next three months until the injunction must expire, John Hancock's interest in protection from delayed access to the credit default swap and Hoosier Energy's interest in avoiding bankruptcy while it seeks to replace Ambac as a partner in this transaction.

The $5 million increase in the cash portion of the bond is significant. It appears to be all that is practically available at this time. This is not cash that Hoosier Energy has on hand. It will come from an additional letter of credit from CoBank. John Hancock wants a greater increase in the cash portion of the security (another $20 million), but Hoosier Energy asserts that it has stretched its

-4-

available credit as far as it can go. Hoosier Energy's own credit rating has been downgraded as a result of this lawsuit and the liquidity risks it has created. As a cooperative of rural electrical cooperatives, Hoosier Energy does not build up large cash reserves or other liquid assets. The $20 million letter of credit was issued back in January. There is no reason to expect Hoosier Energy to be able to come up with a much larger letter of credit at this time, and Hoosier Energy should be devoting most of its management and legal energy now to replacing the Ambac credit default swap by the end of the year.[2]

John Hancock's mortgage now provides substantially more protection than it did in December 2008. At that time, the mortgage was limited to the Merom generating facility itself. Since then, however, under the terms of the Merom transaction, John Hancock has acquired similar security interests in all major Hoosier Energy generating assets. The John Hancock mortgage is second in priority behind Hoosier Energy's secured lenders. Last December, the court did not have a recent, reliable appraisal of the value of the Merom facility. See 2008 WL 5216027, at *6-8. Hoosier Energy has now submitted an appraisal of its assets as of March 2009. That appraisal valued the Merom facility alone at $1.633 billion, and the additional mortgaged assets at $843 million. The collateral protecting John Hancock thus has a total estimated value of $2.476 billion. The

---

[2]Much to this court's surprise, Hoosier Energy was able to comply with the Seventh Circuit's order to provide an additional $20 million in cash security in January 2009. Hoosier Energy was able to do so only by the grace of defendant CoBank. The court cannot predict that any more is available now, when Hoosier Energy is in a tighter situation in terms of liquid assets.

secured debt that is more senior to John Hancock's rights totals approximately $718 million. That leaves available value of approximately $1.758 billion to protect John Hancock from a potential loss of approximately $140 million. Making generous allowances for the estimates that are necessary as part of any appraisal, this second mortgage thus provides John Hancock with ample protection.

The court recognizes that John Hancock would prefer a form of security that would be simpler to recover, such as a larger cash bond. The overall combination of security here provides ample protection for John Hancock against the combined risk that the injunction was issued erroneously and that Ambac might not be able to honor its obligation to make the termination payment. The security here needs to stay in place for just under three more months while Hoosier Energy makes a final effort to replace Ambac and avoid default. Demanding even more (and more liquid) security from Hoosier Energy at this point would effectively decide this case and make continued injunctive relief unavailable, resulting in prompt bankruptcy. The court concludes that the additional security, in the form of the higher cash security, the higher overall bond, and the more valuable and broader mortgage now combine to provide John Hancock with sufficient security for the time being, despite the downgrades of Ambac's credit and to comply with the directive of the Seventh Circuit. If circumstances continue to change, of course, the court will promptly entertain a request for a further hearing on the subject. See Fed. R. Civ. P. 62(c).

-7-

As conditions of keeping the existing injunction in effect, Hoosier Energy shall submit an additional cash security of $5 million and a replacement general bond for $113 million no later than October 14, 2009. Other conditions of the order of December 11, 2008 remain in effect, including the existing cash security of $22 million.

So ordered.

Date:  October 5, 2009

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Steven M. Badger
BOSE MCKINNEY & EVANS, LLP
sbadger@boselaw.com

Michael Baratz
STEPTOE & JOHNSON, LLP
mbaratz@steptoe.com

Jonathan Chiel
JOHN HANCOCK FINANCIAL SERVICES, INC.
jchiel@hancock.com

Erin L. Connell
RILEY BENNETT & EGLOFF
econnell@rbelaw.com

Israel Dahan
CADWALADER WICKERSHAM & TAFT LLC
israel.dahan@cwt.com

David Roy Day
CHURCH CHURCH HITTLE & ANTRIM
day@cchalaw.com

Kathleen I. Hart
BOSE MCKINNEY & EVANS, LLP
khart@boselaw.com

Matthew J. Herrington
STEPTOE & JOHNSON, LLP
mherrington@steptoe.com

Jonathan M. Hoff
CADWALADER WICKERSHAM & TAFT LLC
jonathan.hoff@cwt.com

Richard U.S. Howell
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654

-9-

Benjamin W. Hulse
KIRKLAND & ELLIS LLP - Chicago
bhulse@kirkland.com

James C. Joslin
KIRKLAND & ELLIS LLP - Chicago
jjoslin@kirkland.com

Ryan L. Leitch
RILEY BENNETT & EGLOFF LLP
rleitch@rbelaw.com

Steven Lenkowsky
CADWALADER WICKERSHAM & TAFT LLC
steven.lenkowsky@cwt.com

Maeve O'Connor
DEBEVOISE & PLIMPTON, LLP
mloconno@debevoise.com

Reed S. Oslan, P.C.
KIRKLAND & ELLIS LLP - Chicago
roslan@kirkland.com

George T. Patton, Jr.
BOSE MCKINNEY & EVANS, LLP
gpatton@boselaw.com

John R. Schaibley, III
BAKER & DANIELS
jrschaib@bakerd.com

Howard H. Stahl
STEPTOE & JOHNSON, LLP
hstahl@steptoe.com

Robert K. Stanley
BAKER & DANIELS - Indianapolis
rkstanle@bakerd.com